IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA,       )
                                )    Case No.
        Plaintiff,              )
                                )
        v.                      )
                                )
TIFFANY NAKIA EXPOSE,           )
                                )
        Defendant.              )
_____ )

## COMPLAINT

The United States of America complains and alleges:

1.      The United States of America brings this action to restrain and enjoin Defendant Tiffany Nakia Expose and all those acting in concert with or under her direction and/or control, from:

    a.    Preparing, filing, directing, or assisting in the preparation or filing of federal tax returns, amended returns, and other related documents and forms, including any electronically-submitted tax returns or tax-related documents, for any entity or person other than themselves;

b.      Preparing or assisting in the preparation of federal tax returns that they know will result in the understatement of any tax liability or the overstatement of federal tax refunds;

c.      Engaging in any activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and 6701; and

d.      Engaging in any fraudulent or deceptive conduct which substantially interferes with the proper administration and enforcement of the internal revenue laws.

## JURISDICTION AND VENUE

2.      Pursuant to 26 U.S.C. § 7401, the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, authorized and requested this action and the Attorney General of the United States directed that it be commenced.

3.      The Court has jurisdiction to hear this action pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402(a).

4.      Venue is proper in this Court pursuant to 26 U.S.C. §§ 7407(a), 7408(a), and 28 U.S.C. § 1391, because the Defendant prepares tax returns within this judicial district and a substantial part of the events giving rise to this claim occurred within this judicial district.

**Defendant**

5.      Defendants Tiffany Nakia Expose resides in Buford, Georgia and maintains a post office box in Duluth, Georgia.

6.      Expose owns and operates Defendant Expose Tax & Financial Services ("Expose Tax"), a tax return preparation business in Suwanee, Georgia.

7.      Expose owns and operates Defendant Expose Tax Services LLC, a tax return preparation business in Suwanee, Georgia.

8.      Expose owns and operates Defendant Expose Tax Financial Services LLC, a tax return preparation business in Suwanee, Georgia.

**Expose's Tax Preparation Activities**

9.      Expose started to prepare tax returns in 2007 at her home.

10.      In 2010, Expose opened her first location in Suwanee, Georgia. On or about February 26, 2010, Expose registered this business as a limited liability company under the name Expose Tax Services LLC.

11.      In 2012, Expose opened her second location in Norcross, Georgia. On or about July 18, 2013, Expose registered this business as a limited liability company under the name Expose Tax and Financial Services LLC.

12.      Expose applied for, and the IRS assigned her, a Preparer Tax Identification Number ("PTIN"). A PTIN is used to identify an individual return preparer on the customers' tax returns.

13.     Expose has obtained 7 different Electronic Filing Identification Numbers ("EFIN") from the IRS. Only one is currently active. An EFIN is used to identify the business that is electronically filing a tax return.

14.     Expose is a tax return preparer as defined by 26 U.S.C. § 7701(a)(36). She has prepared other people's Forms 1040 (U.S. Individual Income Tax Return) for compensation at least between 2007 and the present.

15.     Expose prepared the following numbers of returns:

Number of Returns Prepared.

| Year | Number of Returns |
| --- | --- |
| 2014 | 1,280 |
| 2015 | 1,545 |
| 2016 | 1,651 |
| 2017 | 1,665 |
| 2018 | 1,718 |
| 2019 | 898 |

16.     Expose prepares tax returns that purposefully understate the tax her customers owe or overstate the refunds they are entitled to claim.

17.     Expose reports fabricated information that her customers did not provide to her on the tax returns that she prepares.

18.     Examples of instances where Expose fabricated information in order to understate her customers' taxable income, and therefore their tax liability, or overstated the refunds to which her customers were entitled are included below. To

protect her customers' identities, they are identified by a number, e.g., C1, C2, etc. The United States is serving a key with the Complaint.

### Fabricated Schedule C Business and Income Expenses

19.     Individual taxpayers who operate a business as a sole proprietorship must report the business's income and expenses on a Schedule C (Profit or Loss from Business – Sole Proprietorship) that is filed as part of the taxpayer's Form 1040. The net figure reported on a Schedule C, whether a profit or a loss, is a component of the taxpayer's adjusted gross income ("AGI").

20.     Expose understates her customers' AGI by fabricating or inflating losses claimed on a Schedule C filed with the returns. This fraudulently reduces the amount of taxable income the customers report and thus the amount of tax that they report they owe. The reduction in tax also leads to bogus refund claims.

21.     Often, Expose will include a Schedule C on returns for customers she knows do not own or operate a business.

22.     Customers C1, C2, C3, C4, C6, C7, and C8 are all wage earners. Expose attached a Schedule C to each of their tax returns even though none of them had a business. None of these Schedules C identified the name or type or purported business. The tables below show some of the fabricated expenses Expose placed on these Schedules C:

#### a.  Schedule C for 2014

| Customer | Gross Receipts | Net Loss | Car and Truck Expense | Repairs | Supplies | Other Expenses |
|---|---|---|---|---|---|---|
| C1 | $0 | $9,443 | $6,443 | $0 | $0 | $3,000 |
| C2 | $0 | $17,376 | $7,104 | $1,500 | $1,000 | $7,772 |
| C3 | $0 | $24,140 | $7,460 | $2,000 | $1,500 | $8,930 |
| C4 | $0 | $21,167 | $7,607 | $1,660 | $0 | $5,400 |
| C6 | $0 | $17,915 | $5,671 | $400 | $0 | $11,844 |
| C7 | $0 | $5,820 | $0 | $1,800 | $600 | $3,240 |
| C8 | $0 | $5,866 | $2,366 | $0 | $0 | $3,500 |

#### b.  Schedule C for 2015

| Customer | Gross Receipts | Net Loss | Car and Truck Expense | Repairs | Supplies | Other Expenses |
|---|---|---|---|---|---|---|
| C1 | $0 | $12,522 | $5,522 | $1,800 | $1,000 | $4,200 |
| C2 | $0 | $12,957 | $6,174 | $0 | $0 | $6,783 |
| C3 | $0 | $25,318 | $8,088 | $2,000 | $1,500 | $6,980 |
| C4 | $0 | $18,830 | $9,230 | $1,600 | $1,000 | $5,000 |
| C7 | $0 | $13,193 | $5,513 | $1,800 | $1,000 | $4,880 |
| C8 | $0 | $13,400 | $5,220 | $2,500 | $1,500 | $4,180 |

#### c.  Schedule C for 2016

| Customer | Gross Receipts | Net Loss | Car and Truck Expense | Repairs | Supplies | Other Expenses |
|---|---|---|---|---|---|---|
| C1 | $0 | $9,809 | $4,838 | $1,211 | $0 | $3,760 |
| C2 | $0 | $12,428 | $4,511 | $1,827 | $1,000 | $5,090 |
| C3 | $0 | $5,850 | $2,430 | $300 | $0 | $3,120 |
| C4 | $0 | $4,442 | $4,442 | $0 | $0 | $0 |
| C7 | $0 | $10,270 | $5,390 | $1,240 | $1,000 | $2,640 |
| C8 | $0 | $6,644 | $3,024 | $500 | $0 | $3,120 |

23.     In addition to the amounts in the tables above, Expose included the following additional fabricated expenses:

    a.  On C3's 2014 Schedule C, Expose included $1,000 in insurance and $3,250 in travel and meals expenses.

    b.  On C3's 2015 Schedule C, Expose included $3,500 in insurance, $1,000 in taxes and licenses, and $2,250 in travel and meals expenses.

    c.  On C4's 2014 Schedule C, Expose included $4,000 in cost of goods sold even though gross receipts were $0. The same Schedule C showed $2,500 in travel expenses.

    d.  On C4's 2015 Schedule C, Expose included $2,000 in travel expenses.

24.     In 2019, Expose prepared 270 Schedules C that showed a loss, including 222 that showed $0 in gross receipts.

## Earned Income Tax Credit Fraud

25.     Expose used the fictitious figures she reported on her customers' Schedules C to support bogus Earned Income Tax Credit ("EITC") claims.

26.     The EITC is a refundable tax credit available to taxpayers who earn income below certain levels. The amount of the credit is based on the taxpayer's income, claimed number of dependents, and filing status. Because the EITC is a refundable credit, in certain circumstances it can entitle a taxpayer to a refund

greater than the amount of tax paid or a payment from the U.S. Treasury even if no tax is reported.

27.    Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. To illustrate, the EITC for individuals who filed as single, head of household, or qualifying widower for 2017 increased as income increased between $1 and $14,050 and decreased as income increased beyond $18,350. For individuals with married filing jointly status, the amount of the credit increased as income increased between $1 and $14,050 and decreased as income increased beyond $23,950. For 2017, the maximum EITC was $6,318 and was available to eligible individuals who earned between $14,000 and $23,950 and had three dependent children. Some tax preparers who manipulate reported income to maximize EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range."

28.    By claiming fictitious losses to offset her customers' actual income, Expose made it appear that her customers were entitled to the EITC when they were not.

29.    In 2011 and 2014, the IRS assessed penalties against Expose under 26 U.S.C. § 6695(g) for improperly claiming tax credits for her customers.

30.     The Schedule C losses Expose fabricated for C1, C2, C3, C4, C6, C7, and C8, described in paragraphs 22 and 23, reduced the amount of income those customers reported and made it appear that they qualified for EITCs when they did not. The amounts of those credits are in the tables below:

a.  EITC Claimed for 2014

| Customer | EITC Claimed |
|---|---|
| C1 wife | $3,305 |
| C2 | $3,549 |
| C3 | $3,751 |
| C4 | $2,070 |
| C6 | $1,212 |
| C7 | $3,654 |

b.  EITC Claimed for 2015

| Customer | EITC Claimed |
|---|---|
| C1 | $1,112 |
| C2 | $2,431 |
| C3 | $3,338 |
| C4 | $1,722 |
| C6 | $3,359 |
| C7 | $2,378 |
| C8 | $627 |

c.  EITC Claimed for 2016

| Customer | EITC Claimed |
|---|---|
| C1 | $858 |
| C2 | $1,344 |
| C7 | $2,249 |
| C8 | $862 |

31.     For 2014, Expose prepared separate tax returns for a married couple identified here as C1. She improperly made their filing statuses Head of Household and Single. Along with the fabricated Schedules C, this made it appear as though the wife qualified for an EITC of $3,305 when they did not qualify for any EITC.

32.     C7's 2014 EITC was improperly inflated by the fabricated amounts Expose placed on the Schedule C attached to C7's return. None of the other customers described in paragraph 28 qualified for any EITC claimed.

33.     On C6's 2015 Schedule C, Expose included fabricated income as indicated in the table below. This fabricated income increased C6's claimed income which increased C6's claimed EITC from $3,035 to $3,359, which was the maximum EITC for a single filer with one child.

Schedule C claiming inflated income for 2015

| Customer | Gross Receipts | Net Gain | Car and Truck Expense | Repairs | Supplies | Other Expenses |
|---|---|---|---|---|---|---|
| C6 | $17,638 | $2,559 | $7,159 | $1,230 | $0 | $6,690 |

**Fabricated and Improper Schedule A Deductions**

34.     Another scheme Expose uses to understate her customers' tax liabilities is to overstate or fabricate deductions claimed on Schedule A, filed with the return.

35.     One way Expose did this was to fabricate unreimbursed employee business expenses (EBE). In each case described below, the customer did not know why the item was claimed, did not tell Expose they incurred an unreimbursed

expense, and did not provide an amount to be claimed as such. The tables below describes EBE Expose improperly included on her customers' tax returns:

a. Unreimbursed Employee Business Expenses for 2014

| Customer | Wages | Total EBE Claimed | % of wages |
|---|---|---|---|
| C1 husband | $52,030 | $37,420 | 72% |
| C1 wife | $16,941 | $12,300 | 73% |
| C2 | $52,873 | $17,202 | 33% |
| C3 | $53,098 | $19,100 | 36% |
| C4 | $55,098 | $49,508 | 90% |
| C5 | $34,396 | $2,794 | 8% |
| C6 | $48,817 | $10,200 | 21% |
| C7 | $40,891 | $19,570 | 48% |
| C8 | $53,773 | $23,167 | 43% |

b. Unreimbursed Employee Business Expenses for 2015

| Customer | Wages | Total EBE Claimed | % of wages |
|---|---|---|---|
| C1 | $51,685 | $13,600 | 26% |
| C3 | $56,889 | $8,500 | 15% |
| C4 | $55,088 | $15,544 | 28% |
| C5 | $43,858 | $3,319 | 8% |
| C7 | $55,166 | $14,736 | 27% |
| C8 | $52,383 | $14,467 | 28% |

c. Unreimbursed Employee Business Expenses for 2016

| Customer | Wages | Total EBE Claimed | % of wages |
|---|---|---|---|
| C1 | $55,931 | $3,220 | 6% |
| C2 | $59,555 | $3,774 | 6% |
| C4 | $57,057 | $3,140 | 6% |
| C7 | $50,785 | $17,171 | 34% |
| C8 | $53,180 | $4,164 | 8% |

11

36.     Another way Expose overstated or fabricated deductions claimed on her customers' Schedule A was to include fabricated expenses on Line 23, which is where a person can claim expenses paid to produce taxable income. The statements attached to Expose's customers' returns stated that these amounts were for "mileage." Taxpayers are not allowed to deduct the cost of the miles they commute between work and home. Mileage for work is included in EBE rather than line 23. The table below describes some of the amounts claimed and the number of miles that would need to be driven for work over and above the miles driven to commute in order to claim the amount on their returns:

Mileage Claimed on Schedule A, Line 23-Other Expenses

| Customer | Year | Wages | Amount Claimed | Miles |
|---|---|---|---|---|
| C1 | 2016 | $55,931 | $15,211 | 28,169 |
| C2 | 2016 | $59,555 | $15,210 | 28,167 |
| C3 | 2016 | $55,660 | $16,211 | 30,020 |
| C4 | 2015 | $55,088 | $400 | 696 |
| C4 | 2016 | $57,057 | $11,511 | 21,317 |
| C5 | 2014 | $55,089 | $15,049 | 26,873 |
| C5 | 2015 | $55,088 | $21,430 | 37,270 |
| C6 | 2015 | $8,940 | $13,200 | 22,957 |
| C8 | 2015 | $52,383 | $13,200 | 22,957 |
| C8 | 2016 | $53,180 | $16,800 | 31,111 |

37.     Starting with tax returns filed in 2019 for tax year 2018, taxpayers cannot claim a deduction for unreimbursed business expenses.

38.     In 2019, Expose included fabricated claims for Other Taxes on Line 6 of Schedule A. This line is for taxes paid in a foreign country and for generation skipping taxes. Expose included these claims on 286 of the 898 returns she prepared.

## HARM TO THE UNITED STATES

39.     Expose's preparation of tax returns making incompetent, negligent, reckless, and fraudulent claims harms the United States Treasury. These practices harm the public because Expose prepares false or fraudulent tax returns that understate her customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes

40.     Expose's return preparation practices harm the United States Treasury by causing lost tax revenue.

41.     Expose harms her customers by charging fees for the preparation of accurate tax returns but instead she prepares tax returns with fabricated or exaggerated items that understate her customers' tax liabilities and claim refunds to which the customers are not entitled. In doing so, Expose causes her customers to incorrectly report their federal tax liabilities and underpay their taxes.

42.     Expose's unlawful practices further harm the United States because the IRS must devote its resources to investigating her activities. The IRS expends time and resource to ascertain her customers' correct tax liabilities, recover any refunds erroneously issued, and collect any additional taxes and penalties.

43.     Expose's illegal conduct also harms honest tax return preparers because, by preparing tax returns that unlawfully inflate their customers' refunds, Expose gains a competitive advantage over tax return preparers who prepare returns in accordance with the law. Customers who are satisfied with the tax refunds they receive, but are often unaware of Expose's illegal return preparation practices, return to her for subsequent tax seasons.

44.     In addition to the direct harm caused by preparing tax returns that understate customers' tax liabilities and/or overstate their refunds, Expose's activities undermine confidence in the federal tax system. Expose's activities also encourage noncompliance with the internal revenue laws by failing to confirm with her customers that their returns honestly and accurately reflected the information they provided. Similarly, Expose's fraudulent use of the EITC undermines public confidence in a statutory credit meant to encourage low-income workers with young children to maintain employment.

## COUNT I: INJUNCTION UNDER 26 U.S.C. § 7407 FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. §§ 6694 AND 6695

45.     Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a person who is a tax return preparer from engaging in certain conduct or from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes the following:

(a)     Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a tax return preparer who prepares a return that

14

contains an understatement of tax liability or an overstatement of a refund due to an unreasonable position that the preparer knew or should have known was unreasonable;

(b)     Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which penalizes a tax return preparer who prepares a return that contains an understatement of tax liability or an overstatement of a refund due to willful or reckless conduct;

(c)     Engaging in conduct subject to penalty under 26 U.S.C. § 6695(c), which penalizes a tax return preparer who fails to furnish their identifying number as required under 26 U.S.C. § 6109(a).

(d)     Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

46.     In order for a court to issue such an injunction, the court must find that:

(a)     The tax return preparer engaged in the prohibited conduct; and

(b)     Injunctive relief is appropriate to prevent the recurrence of such conduct

47.     If a tax return preparer's conduct is continual or repeated and the court finds that a narrower injunction would not be sufficient to prevent the preparer's interference with the proper administration of the internal revenue laws, the court

may permanently enjoin the person from acting as a tax return preparer. *See* 26 U.S.C. § 7407(b).

48.     Expose continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing returns that understate her customers' tax liabilities and overstate their refunds. As described above, Expose has prepared returns that claim deductions for expenses that were not incurred by the taxpayers and EITCs to which the taxpayers are not entitled. Expose did so with the knowledge that the positions taken on the returns were unreasonable and lacked substantial authority. Expose has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694(a).

49.     Additionally, Expose has engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) by willfully understating their customers' liabilities and acting with a reckless and intentional disregard of rules and regulations.

50.     A narrower injunction would be insufficient to prevent Expose's interference with the administration of the internal revenue laws.

**COUNT II: INJUNCTION UNDER 26 U.S.C. § 7408 FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. § 6701**

51.     Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701, which penalizes a person who aids or assists in the preparation of tax returns that the person knows will result in an understatement of tax liability.

16

52.     Expose has engaged in conduct subject to penalty under 26 U.S.C. § 6701 by preparing income tax returns that claim credits and deductions that she knew to be improper, false, and/or inflated.

53.     Expose's repeated actions fall within 26 U.S.C. § 7408, and injunctive relief is appropriate to prevent a recurrence of this conduct.

## COUNT III: INJUNCTION UNDER 26 U.S.C. § 7402 FOR UNLAWFUL INTERFERENCE WITH THE ENFORCEMENT OF INTERNAL REVENUE LAWS

54.     Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

55.     Expose has repeatedly and continually engaged in conduct that interferes substantially with the administration and enforcement of the internal revenue laws.

56.     If Expose continues to act as tax return preparer, her conduct will result in irreparable harm to the United States, and the United States has no adequate remedy at law.

57.     Expose's conduct has caused and will continue to cause substantial tax losses to the United States Treasury, much of which may be undiscovered and unrecoverable. Moreover, unless Expose is enjoined from preparing returns, the IRS will have to devote substantial and unrecoverable time and resources

identifying and auditing her customers individually to detect understated liabilities and overstated refund claims.

58.     The detection and audit of erroneous tax credits and deductions claimed on returns prepared by Expose would be a significant burden on IRS resources.

## RELIEF REQUESTED

Plaintiff, the United States of America, respectfully prays for the following:

A.     That the Court find that Tiffany Nakia Expose has repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695 and that injunctive relief is appropriate under 26 U.S.C. § 7407 to prevent recurrence of that conduct;

B.     That the Court find that Tiffany Nakia Expose has repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. § 6701 and that injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent recurrence of that conduct;

C.     That the Court find that Tiffany Nakia Expose has repeatedly and continually engaged in conduct that substantially interferes with the proper enforcement and administration of the internal revenue laws and that injunctive relief is appropriate under 26 U.S.C. § 7402(a) to prevent recurrence of that conduct;

D.    That the Court enter a permanent injunction prohibiting Tiffany Nakia Expose, any entity through which she conducts business, and all persons and entities in active concert or participation with her from directly or indirectly:

(1)    Preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than herself;

(2)    Transferring, selling, or assigning her customer lists and/or other customer information;

(3)    Engaging in activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and/or 6701;

(4)    Engaging in conduct that substantially interferes with the proper administration and enforcement of the tax laws.

E.    That the Court enter an injunction requiring Tiffany Nakia Expose at her own expense:

(1)    To send by email or certified mail, return receipt requested, a copy of the final injunction entered against her in this action, as well as a copy of the Complaint setting forth the allegations as to how Tiffany Nakia Expose negligently, recklessly, or fraudulently prepared federal income tax returns, to each person for whom she prepared federal income tax returns or any other federal tax forms after January 1, 2019;

(2)     To turn over to the United States copies of all returns and claims for refund that Tiffany Nakia Expose prepared after January 1, 2019;

(3)     To provide the United States a list of the names, social security numbers, addresses, phone numbers, and email addresses of each person she prepared tax returns or claims for refund for after January 1, 2019;

(4)     To post for one year, on all social media accounts and websites used to advertise her tax preparation services, a statement that she has been enjoined from the preparation of tax returns and a hyperlink to any press release regarding the injunction that the Department of Justice may issue regarding the injunction;

(5)     To file a sworn statement with the Court evidencing Tiffany Nakia Expose's compliance with the foregoing directives within forty-five (45) days of entry of the final injunction in this action; and

(6)     To keep records of Tiffany Nakia Expose's compliance with the foregoing directives, which may be produced to the Court, if requested, or the United States pursuant to paragraph F, infra;

F.     That the Court enter an order allowing the United States to monitor Tiffany Nakia Expose's compliance with the injunction and to engage in post-judgment discovery in accordance with the Federal Rules of Civil Procedure; and

H.     That the Court grant the United States such other and further relief as the Court deems appropriate.

**Certificate of compliance with Local Rule 5.1C**

I certify that this complaint complies with Local Rule 5.1C and is prepared in Times New Roman font, size 14.

*/s/ John P. Nasta, Jr.*
JOHN P. NASTA, JR.
Trial Attorney
U.S. Department of Justice, Tax Division

Dated: February 11, 2020

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

By:
*/s/ John P. Nasta, Jr.*
JOHN P. NASTA, JR.
Florida Bar #1004432
U.S. Department of Justice, Tax Division
Post Office Box 14198
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6560
john.nasta@usdoj.gov

Of Counsel

BYUNG J. PAK
UNITED STATES ATTORNEY

Neeli Ben-David
Assistant U.S. Attorney
Ga. Bar No. 049788
Richard B. Russell Federal Building
75 Ted Turner Dr., SW, Ste. 600
Atlanta, GA 30303
Telephone: (404) 581-6303
Neeli.Ben-David@usdoj.gov